# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

CHARITY FIGGINS,

          Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

No. C 13-3022-MWB

MEMORANDUM OPINION AND
ORDER REGARDING REPORT AND
RECOMMENDATION

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................. 2
    A.    *Procedural Background* ........................................... 2
    B.    *ALJ's Determinations*............................................ 2
    C.    *Judge Strand's R&R* ............................................. 9

II.    **ANALYSIS** ..................................................................... 10
    A.    *Standard of Review*............................................... 10
    B.    *The Commissioner's Objection*................................. 15
    C.    *Figgins's Objection*.............................................. 18

III.    **CONCLUSION** ............................................................... 22

    This case is before me on a Report and Recommendation (R&R) from Judge Leonard Strand, filed on January 2, 2014 (docket no. 15). In the R&R, Judge Strand recommends that I reverse and remand a decision by the Commissioner of Social Security (the Commissioner) denying plaintiff Charity Figgins (Figgins) disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* Both the Commissioner and Figgins have timely filed objections to the R&R (docket nos. 16 and

17). For the reasons discussed below, I decline to adopt the recommendations in the R&R, and, instead, affirm the Commissioner's decision.

## I. INTRODUCTION

### A. Procedural Background

Judge Strand summarized this case's procedural background:

> [Figgins] protectively filed her applications for [benefits] on November 5, 2010. AR 11. The applications were denied initially and on reconsideration. *Id.* Figgins then requested a hearing, which was conducted May 14, 2012, by Administrative Law Judge (ALJ) John Sandbothe. *Id.* Figgins testified during the hearing, as did her counselor and a vocational expert (VE). AR 30-59. The ALJ issued a decision denying Figgins's application on June 13, 2012. AR 11-21. On February 20, 2013, the Appeals Council denied Figgins's request for review. AR 1-3. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

> On April 16, 2013, Figgins commenced an action in [federal] court seeking review of the ALJ's decision.

(Docket no. 15, at 2). Judge Strand issued his R&R on January 2, 2014. I must now decide whether to adopt the recommendation in the R&R in light of the parties' objections.

### B. ALJ's Determinations

Neither party objects to Judge Strand's summary of the ALJ's determinations in this case. I therefore adopt the summary from the R&R. The ALJ found:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

> (2) The claimant has not engaged in substantial gainful activity since November 5, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: hepatitis C, bipolar disorder, anxiety, obesity, borderline personality disorder, and history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), as she is able to lift or carry 50 pounds occasionally and 25 pounds frequently but is limited to simple, routine, repetitive work with superficial contact with the public and no more than a regular pace.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on November 21, 1984 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that

the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2010 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Docket no. 15, at 5-7); AR 13-21.

Judge Strand went on to analyze the ALJ's findings at each step in the sequential evaluation process:

> At Step Two, the ALJ found all of Figgins's claimed impairments (hepatitis C, bipolar disorder, anxiety, obesity, borderline personality disorder, and history of substance abuse) to be severe, as they cause more than minimal limitations in her ability to perform work-related activities. AR 13. At Step Three, the ALJ found that none of Figgins's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 14. With regard to the physical impairments of hepatitis C and obesity, the ALJ noted that no evidence indicates limitations or complications sufficient to satisfy any listing. *Id.* Figgins does not challenge this finding.
>
> As for mental impairments, the ALJ stated that he considered listings 12.04, 12.06, 12.08 and 12.09, and concluded that Figgins's impairments do not meet those listings. *Id.* He first analyzed the "paragraph B" criteria, noting that to satisfy these criteria the impairments must cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. *Id.* A "marked" limitation is one that is more than moderate but less than extreme. *Id.* The ALJ found that Figgins had no restrictions concerning activities of daily living, mild difficulties in social functioning and moderate difficulties with regard to concentration, persistence or pace. *Id.* The ALJ also found that Figgins had experienced no episodes of decompensation which have been of extended duration. *Id.* Therefore, the ALJ

4

found the paragraph B criteria were not satisfied. AR 15. He also stated that he had considered the "paragraph C" criteria and that the evidence failed to establish those criteria, as well. *Id.* Figgins does not challenge any of these findings.

At Step Four, the ALJ provided a residual functional capacity (RFC) assessment and found that Figgins had the RFC to perform medium work except that she is limited to simple, routine, repetitive work with superficial contact with the public and no more than a regular pace. *Id.* In explaining this determination, the ALJ first addressed the credibility of Figgins's statements concerning the disabling effects of her impairments. AR 15. He referenced the relevant factors for weighing a claimant's credibility and concluded that her statements were not credible to the extent that they were inconsistent with his RFC determination. *Id.* He provided the following reasons for this finding: (1) Figgins's allegations of total disability are inconsistent with the objective medical evidence, (2) her own statements concerning her activities indicate that her symptoms are not as severe as alleged, (3) Figgins's ability to work on a part-time basis and her efforts to find full-time employment were inconsistent with her allegations and (4) the medical opinions, as weighted by the ALJ, do not support Figgins's allegations. AR 16-19.

With regard to the medical evidence, the ALJ acknowledged that it "reflect[s] a long history of depression, bipolar disorder, borderline personality disorder, and substance use including methamphetamines, cocaine, marijuana, and alcohol." AR 16. He noted, however, that she completed addiction treatment in August 2010 and that she receives ongoing therapy to manage her mental health symptoms. *Id.* The ALJ pointed out that Figgins's treating psychiatrist, Dr. Ramos, managed her symptoms with medication and, in December 2010, found that she demonstrated a good mood, full affect, no suicidal or homicidal thoughts and no paranoia. *Id.* At the same time, however, Dr. Ramos expressed concern about Figgins's use of marijuana. AR 548. Indeed, she had stopped taking her prescription medication (Risperdal) and instead was smoking marijuana three times a day, declaring it

to be "the wonder drug." *Id.* Dr. Ramos counseled Figgins to stop using marijuana and prescribed Invega as an alternative. *Id.*

The ALJ next discussed Figgins's visits to the emergency room in January 2011, where she reported anxiety and feelings of hopelessness and worthlessness. AR 16. Figgins denied having suicidal ideation but indicated that she was still smoking marijuana daily. AR 556. After her second visit in three days she was admitted to the hospital and discharged one day later. AR 556-66. The Minnesota Multiphasic Personality Inventory-2 test was administered but produced invalid results "due to a rather exaggerated response pattern." AR 564.

The ALJ noted that Figgins was admitted again, this time for several days, in June 2011. AR 17. This resulted from a suicide attempt involving an overdose of Tylenol. AR 17, 614, 680-81, 687-90. Upon admission she was having a very difficult time controlling her emotions but had stabilized enough to be released five days later. AR 682. She returned to the emergency room in August 2011, stating that she was out of her prescription medication and was feeling anxious and angry. AR 669.

The ALJ next noted that progress reports during 2011 by Dr. Ramos and Judy Johnson, a nurse practitioner, indicated Figgins was doing reasonably well while on her medications. AR 17. By December 2011, Figgins reported that she was feeling much better and was hoping to be reunited with her children, who were in foster care. AR 17, 653. She also stated that she was looking for work and was attending school online on a full-time basis. AR 17, 654.

As for Figgins's reports of her daily activities, the ALJ noted that she acknowledged being able to "do everything at times." AR 19. He also described Figgins's reports that she likes being around people she knows, cares for her personal hygiene, prepares meals, shops, performs household chores and drives a car. *Id.* In addition, the ALJ noted that Figgins watches movies and television, takes part in arts and crafts

activities, plays video games with friends and enjoys putting on makeup and singing. *Id.* Moreover, by the time of the hearing Figgins had custody of her children and testified that her daily activities include taking care of them and going to the store. AR 19, 41-42.

With regard to opinion evidence, the ALJ first discussed questionnaires completed by Nurse Johnson in May 2012, in which she reported that Figgins has difficulty managing stress in the workplace, has only fair-to-poor work-related abilities and should be limited to no more than part-time work. AR 17, 716-21. The ALJ found that this opinion was not entitled to great weight because (a) Nurse Johnson is not an acceptable medical source and (b) her assessment is not supported by either the evidence of record or Nurse Johnson's own treatment notes. AR 17.

A psychologist, Dr. Harper, provided opinions based on an evaluation of Figgins in August 2011 regarding her parenting abilities. *Id.* He diagnosed major depressive disorder, generalized anxiety disorder, borderline personality disorder and marijuana dependence. AR 17, 593-605. Dr. Harper found that Figgins was not capable of caring for her children and that she needed intensive mental health treatment. AR 603. He opined that her mental health issues were likely to interfere with her ability to maintain employment and recommended that she seek disability benefits. AR 604. The ALJ determined that Dr. Harper's opinions were not entitled to great weight. AR 18. He noted that the evaluation was conducted to determine Figgins's parenting abilities, not her ability to function in the workplace. He also found that Dr. Harper's opinion as to Figgins's ability to work was inconsistent with the evidence of record. *Id.*

Dr. Vos, a social worker, saw Figgins for regular therapy sessions beginning in February 2011. AR 17. In May 2012, Dr. Vos prepared a written opinion indicating that Figgins has serious limitations in her ability to function and noting that Figgins suffered from considerable stress and anxiety while working part-time for two months. AR 18, 707-09. Like Dr.

Harper, Dr. Vos concluded that Figgins's mental health problems would continue to interfere with her ability to be employed. AR 709. The ALJ found that Dr. Vos's opinions were not entitled to great weight. AR 18. He noted that Dr. Vos's own records indicated that Figgins was stable and was making excellent progress. *Id.* He also found that Dr. Vos's opinions were inconsistent with other evidence in the record. *Id.*

The ALJ then discussed opinions provided by state agency consultants based on their review of Figgins's records. A medical consultant, Dr. Weis, found that Figgins's physical impairments of hepatitis C and obesity did not prevent her from being able to perform medium work. AR 19. Two psychological consultants, Dr. Wright and Dr. Tashner, found that Figgins had no more than moderate functional limitations, including moderate limitations in (a) the ability to carry out detailed instructions, (b) the ability to work in coordination with or in proximity to others without becoming distracted, (c) the ability to complete a workday and workweek without interruptions from psychological symptoms and (d) the ability to perform at a consistent pace without an unreasonable number and length of rest periods. AR 19, 80- 83, 587. The ALJ found that the opinions of the psychological consultants were entitled to substantial weight because they were supported by the medical evidence, Figgins's work activities and her daily activities. AR 19.

After determining Figgins's RFC, he found that the limitations included in that RFC prevent her from performing any of her past relevant work. *Id.* This required the ALJ to proceed to Step Five and determine whether Figgins is able to perform other jobs that exist in significant numbers in the national economy. AR 20. Based on the VE's answers to hypothetical questions that incorporated Figgins's age, education, work experience and RFC, the ALJ found the answer to be "yes." AR 20-21. The VE's testimony indicated that Figgins was capable of performing such positions as laundry worker, marker and housekeeper/cleaner. AR 20, 57.

> As such, the ALJ concluded that Figgins was not disabled within the meaning of the Act. AR 21.

(Docket no. 15, at 7-12) (footnotes omitted).

## C. *Judge Strand's R&R*

On judicial review before Judge Strand, Figgins only challenged the ALJ's findings regarding her mental impairments. Specifically, Figgins raised three arguments: "(1) the ALJ improperly evaluated Figgins's subjective impairments, (2) the [vocational expert's (VE's)] testimony was flawed because it was based on improper hypothetical questions and (3) the ALJ erred in his weighting of the various medical opinions" (docket no. 15, at 13). Judge Strand rejected (1) and (3), holding that "the ALJ's weighting and analysis of the medical evidence was supported by substantial evidence in the record" (docket no. 15, at 27), and that the ALJ provided good reasons for discounting Figgins's subjective allegations.

Still, Judge Strand recommends that I reverse and remand this case on a ground not raised by Figgins—that the ALJ failed to properly develop the record as required by *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). Judge Strand held that, under *Nevland*, the record in this case is undeveloped because "it does not contain a medical opinion from an acceptable treating or examining source as to [Figgins's] mental RFC" (docket no. 15, at 28). Thus, Judge Strand concluded that "the ALJ failed to fulfill his obligation to fully and fairly develop the record by neglecting to either (a) obtain a medical opinion concerning Figgins's mental RFC from Dr. Ramos, the treating psychiatrist, or—at least—(b) arranging a consultative psychiatric or psychological examination to obtain such an opinion" (docket no. 15, at 29).

As for the vocational expert's testimony, Judge Strand noted that "the ALJ will have to determine whether it is necessary to obtain additional VE testimony" after re-evaluating Figgins's mental RFC on remand (docket no. 15, at 33).

## II. ANALYSIS

### A. Standard of Review

I review Judge Strand's R&R under the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any

more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's *required de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full

*de novo* review" if the record is concise. *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). The United States Supreme Court has stated that the "foremost" principle under the "clearly erroneous" standard of review "is that '[a] finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district

Here, both the Commissioner and Figgins have objected to some of Judge Strand's findings. Although I will review these findings *de novo*, and Judge Strand's other findings for clear error, I review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but

---

court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact.'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See*, *e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying the defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." (quoting *Haggard*, 175 F.3d at 594)). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

## B.    The Commissioner's Objection

The Commissioner objects to Judge Strand's conclusion that *Nevland* compels remand in this case. In *Nevland*, the Eighth Circuit Court of Appeals noted "that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel." *Nevland*, 204 F.3d at 857 (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). "[T]he ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir.2004) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). The court in *Nevland* held that the ALJ failed to properly develop the record before finding, at Step 5, that a claimant was not disabled. *Nevland*, 204 F.3d at 858. Importantly, the court in *Nevland* noted that

> there is no *medical* evidence about how [the claimant's]
> impairments affect his ability to function now. The ALJ relied
> on the opinions of non-treating, non-examining physicians
> who reviewed the reports of the treating physicians to form

> an opinion of [the claimant's] RFC. In our opinion, this does
> not satisfy the ALJ's duty to fully and fairly develop the
> record.

*Id.* Based on the lack of medical evidence, the court in *Nevland* remanded the case, holding that "the ALJ should have sought [] an opinion from [the claimant's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [the claimant's] mental and physical residual functional capacity." *Id.*

I have applied *Nevland* to reverse and remand cases in which there is little medical evidence related to a claimant's ability to function in the workplace. *See, e.g.*, *Al-Hameed v. Colvin*, No. C 13-3009-MWB, 2013 WL 6858427, at *16 (N.D. Iowa Dec. 30, 2013) (remanding, under *Nevland*, where the record "contain[ed] insufficient evidence of the nature and severity of [a claimant's] impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions" (internal quotation marks omitted)); *Hattig v. Colvin*, No. C 12-4092-MWB, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013) (same).

But, *Nevland* does not compel remand in every case that lacks a medical opinion from a treating physician. "While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician *unless a crucial issue is undeveloped*.'" *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)) (emphasis added). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). A claimant's records need not explicitly discuss work-related limitations, as long as the records describe the claimant's "functional limitations with sufficient

generalized clarity to allow for an understanding of how those limitations function in a work environment." *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007).

For example, I recently held in *Agan v. Astrue*, 922 F. Supp. 2d 730, 756 (N.D. Iowa 2013), that an ALJ properly denied a claimant benefits without first obtaining a treating doctor's opinion on the claimant's work-related limitations. In *Agan*, "the ALJ's RFC assessment [was] supported by substantial evidence in the record," and "[t]he ALJ did not rely solely on non-treating doctors to form an opinion on [the claimant's] RFC." *Id.* at 755. The claimant in *Agan* claimed a disability based on back pain. *Id.* at 752. Unlike in *Nevland*, the record in *Agan* contained "medical evidence following [the claimant's] last back surgery . . . which indicated that he was 'doing very well post-operatively.'" *Id.* at 755. "Physical examinations following [the claimant's] surgery indicated normal functioning of his extremities." *Id.* The record in *Agan* even contained evidence that, after his back surgery, the claimant "was working full-time with no limitations noted at his follow-up exam." *Id.* Based on this record, I found that "[t]he medical evidence, including physical examination treatment notes from the treating physicians, provide[d] sufficient support for a finding that [the claimant] was able to function in the workplace." *Id.* at 756. Thus, I held that the ALJ in *Agan* did not need to further develop the claimant's medical record. *Id.*

Based on these standards, *Nevland* does not compel remand here. Unlike *Nevland*, this is not a case in which there is "no medical evidence" related to Figgins's mental RFC. To the contrary, as Judge Strand noted, "the record in this case contains a rather unique array of evidence concerning Figgins's mental impairments" (docket no. 15, at 28). In particular, the ALJ reviewed progress notes or opinions from Ramos, Johnson, Vos, and Harper—all of whom treated or evaluated Figgins—discussing Figgins's mental impairments. Many of these records (referenced in more detail below) explicitly discuss Figgins's employability, while others "allow for an understanding of how [Figgins's]

limitations function in a work environment." *Cox*, 495 F.3d at 620 n.6. While the ALJ ultimately discounted some of the treating caretakers' opinions, the ALJ did not do so on an undeveloped record. In fact, as is discussed below, the ALJ was able to discount Vos's, Johnson's, and Harper's opinions because the record *contained* treatment records that conflicted with their disability opinions. Thus, like in *Agan*, "[t]he medical evidence, including . . . treatment notes from the treating physicians [and other caretakers], provide[d] sufficient support for" the ALJ's findings, such that the ALJ was not required to further develop the record. *Agan*, 922 F. Supp. 2d at 756. Remand under *Nevland* is therefore unnecessary.

## C. *Figgins's Objection*

Figgins objects to Judge Strand's finding "that the ALJ's decision is supported by substantial evidence in the record as a whole, specifically as to the weight given to the various treating sources' opinions (docket no. 17, at 2). Figgins argues that the ALJ improperly discounted Vos's, Johnson's, and Harper's opinions in favor of opinions from state agency psychological consultants. Interestingly, Figgins concedes that "[i]f one only looks at each report individually and without considering the supporting evidence from all the other sources, one might reach the decision reached by the ALJ" (docket no. 17, at 5). But Figgins argues that, "when looking at the entire picture the evidence supporting [Figgins's] claim is overwhelming [because] [t]here is a consistent opinion among those who have treated [Figgins], examined her or supervised her that she is simply not capable of performing competitive work"(docket no. 17, at 5). In short, Figgins argues that the record as a whole is greater than the sum of its parts—that, while the ALJ might have a sufficient basis to discount Vos's, Johnson's, and Harper's opinions individually, the alleged consensus among treating sources is reason to reverse the ALJ's determination.

In their objections, the parties do not dispute that Vos's, Johnson's, and Harper's opinions are not entitled to controlling weight because Vos and Johnson are not "acceptable medical sources" and Harper, who *is* an acceptable medical source, is not a "treating source." Under social security regulations, Vos, a social worker, and Johnson, a nurse, are considered "other sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (noting that social workers and nurse practitioners are "other sources" (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)). The ALJ

> generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p; 71 Fed. Reg. 45593-03, 45596 (Aug. 9, 2006). But "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment . . . there must be evidence from an 'acceptable medical source' for this purpose." *Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). While Harper is an acceptable medical source, Figgins concedes that Harper is not a treating source. Thus, Harper's opinion is not—and cannot be—entitled to controlling weight. SSR 96-2P (July 2, 1996) ("Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'").

Based on these standards, Judge Strand concluded that the ALJ offered sufficient reasons to discount Vos's, Johnson's, and Harper's opinions in favor of the agency consultants' opinions. Judge Strand noted the evidence supporting the ALJ's decision to discount Vos's opinion:

Over approximately one year of repeated interactions, Dr. Vos's treatment notes reflected consistent progress and improvements. AR 607-46. When supporting Figgins's effort to regain custody of her children, Dr. Vos spoke positively of Figgins's successful efforts to obtain employment. AR 646. She then continued to report positive progress for the next two months. AR 644. After Figgins's children were returned, however, Dr. Vos wrote an opinion in support of Figgins's application for disability benefits stating that Figgins's mental health problems would interfere with her employability. AR 709.

There is no evidence that Figgins's work performance at Kraft was deficient or that she was otherwise at risk of being discharged due to performance or attendance issues. Nor, as noted above, is there any indication in Dr. Vos's own contemporaneous treatment notes suggesting that Figgins was struggling with the stresses of working and caring for children. Under these circumstances, it was not unreasonable for the ALJ to question the credibility of Dr. Vos's opinions. Frankly, one could easily conclude that those opinions changed over a very short period of time to fit the differing purposes for which they were offered.

(Docket no. 15, at 20-21). Judge Strand also noted the evidence supporting the ALJ's decision to discount Johnson's opinion:

Nurse Johnson's treatment notes from late 2011 and early 2012 reflect progress and improvements. For example, a progress report in December 2011 stated that Figgins was doing "much better," was looking for work and was in the process of attempting to re-gain custody of her children. AR 653-54. The record contains no intervening progress reports from Nurse Johnson that suggest the limitations she described in the opinions she issued in May 2012.

(Docket no. 15, at 22). Finally, Judge Strand noted the evidence supporting the ALJ's decision to discount Harper's opinion:

Dr. Harper's written report, while extensive, does not specifically address Figgins's employment-related abilities and restrictions. AR 597-605. This is not surprising in light of the fact that the evaluation was not conducted for that purpose. Indeed, Figgins's brief does not cite to any specific opinion by Dr. Harper that the ALJ should have adopted, other than his conclusion that Figgins's mental health issues would interfere with her successful employment. Doc. No. 11 at 30-31.

As noted above, however, an opinion that an applicant is not able to work is not a medical opinion. [*Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)]. Thus, the ALJ was not required to consider Dr. Harper's conclusion that Figgins's mental health issues will "probably" interfere with successful employment. Instead, the ALJ was required to give consideration to any opinions as to the nature and severity of Figgins's impairments, including symptoms, diagnosis and prognosis, what she was capable of doing despite her impairments, and the resulting restrictions. 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). To the extent Dr. Harper's report does describe restrictions that might translate to the workplace, the ALJ did not ignore those restrictions. For example, Dr. Harper noted that Figgins has limited social skills that may contribute to "awkward, inept or inappropriate management of interpersonal relationships." AR 602. The ALJ, in determining Figgins's RFC, found that she is limited "to simple, routine, repetitive work with superficial contact with the public and no more than a regular pace." AR 15.

(Docket no. 15, at 23-24).

Figgins's objection does not respond with particularity to the ALJ's, or Judge Strand's, reasons for discounting these opinions. Rather, Figgins essentially argues that the consensus between Vos, Johnson, and Harper is sufficient to warrant reversing the Commissioner's decision. Figgins also points to the consistency between Vos's hearing testimony and earlier opinion, Johnson's long treatment relationship with Figgins, and the results of Harper's "full range of psychological testing" as evidence that the ALJ

should have given these sources' opinions more weight. At best, Figgins provides reasons why the ALJ *could* have given these sources more weight. But my review here is limited to determining whether substantial evidence supports the ALJ's decision, not whether there is evidence that could support a different conclusion. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008). "[T]he fact that [Figgins] can point to some contradictory evidence in the record does not lead to a conclusion that the ALJ's decision is not supported by substantial evidence." *Id.* at 829. This is especially true here, where none of the opinions relied on by Figgins are entitled to controlling weight. Because I agree with Judge Strand that the ALJ provided sufficient reasons, supported by substantial evidence, for discounting Vos's, Johnson's, and Harper's opinions in favor of the agency consultants' opinions, I conclude that remand based on Figgins's objection is unwarranted.

### III.  CONCLUSION

For the reasons discussed above, I decline to adopt the recommendations in the R&R. The Commissioner's decision is affirmed. The Clerk shall enter judgment in favor of the Commissioner and against Figgins.

**IT IS SO ORDERED**.

**DATED** this 29th day of April, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA